Leslie A. Cohen, Esq. (SBN: 93698)
leslie@lesliecohenlaw.com
J'aime Williams Kerper, Esq. (SBN 261148)
jaime@lesliecohenlaw.com
LESLIE COHEN LAW, PC
1615-A Montana Avenue
Santa Monica, CA 90403
Telephone:  (310) 394-5900
Facsimile:  (310) 394-9280

Attorneys for Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

*In re*

MYLIFE.COM, INC.

　　　　　　　　　Debtor and
　　　　　　　　　Debtor in Possession

Case No. 2:22-bk-14858-ER

Chapter 11

**NOTICE OF MOTION AND MOTION BY DEBTOR IN POSSESSION (1) TO APPROVE LETTER OF INTENT, (2) FOR AUTHORITY TO SELL ESTATE'S INTEREST IN EMPLOYEE RETENTION TAX CREDITS (3) DETERMINING THE BUYER TO BE A "GOOD FAITH" PURCHASER WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 363(M); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF ANTHONY MAZZARELLA**

Date: December 7, 2022
Time: 10:00 a.m.
Courtroom: 1568

TO THE HONORABLE ERNEST ROBLES, UNITED STATES BANKRUPTCY JUDGE,

THE OFFICE OF THE UNITED STATES TRUSTEE, COUNSEL FOR THE CREDITOR'S

COMMITTEE, PARTIES IN INTEREST AND PERSONS REQUESTING SPECIAL

NOTICE:

**PLEASE TAKE NOTICE** that Mylife.com, Inc. ("**Debtor**"), Debtor and Debtor-in-Possession in the above-captioned bankruptcy case, will and hereby does move the Court for an order: (1) approving the Letter of Intent ("**LOI**") with the Argo Partners II, LLC ("**Argo**" or "**Buyer**"); (2) authorizing the sale, free and clear of liens, of the Estate's interest in all of the rights, interests and proceeds to the Debtor's employee retention tax credits provided under section 2301 of the CARES Act (the "**Assets**") to Argo; (3) determining Argo to be a "good faith" purchaser within the meaning of Bankruptcy code Section 363(m); and (4) waiving the 14 day stay under FRBP 6004(h).  The Debtor seeks to sell the Assets for $250,000, to an arms-length buyer. The sale shall be free and clear of all liens and claims, to the extent any exist.

The motion is based upon the accompanying Memorandum of Points and Authorities and Declaration of Anthony Mazzarella, all files and pleadings and records on file in this Chapter 11 bankruptcy case or anything else of which the Court may take judicial notice, and such other evidence as may be presented at the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that the hearing to approve the Motion will be held on December 7, 2022 at 10:00 a.m. before the Honorable Ernest M. Robles, U.S. Bankruptcy Judge, in Courtroom "1568" of the U.S. Bankruptcy Court located at 255 E. Temple St., Los Angeles, CA 90012, 15th floor.

**PLEASE TAKE FURTHER NOTICE** that per Local Bankruptcy Rule (LBR) 9013-1(f), any party objecting to the relief sought in the Motion must file a written objection with the Bankruptcy Court and must serve such objections upon counsel listed above, and the Office of the United States Trustee, at the Office of the U.S. Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, California 90017, not later than 14 days before the date set for hearing.  Failure to file and serve a timely written opposition may be deemed to constitute consent to the relief requested in the Application, per LBR 9013-1(h).

**WHEREFORE**, the Debtor respectfully requests this Court to enter an order:

1.    Granting this Motion in its entirety;

2.     Approving the LOI with Buyer;

3.     Approving the proposed sale of the Assets;

4.     Determining Buyer to be a "good faith" purchaser within the meaning of Bankruptcy code Section 363(m);

5.     Waiving the 14 day stay under FRBP 6004(h).

6.     Authorizing the Debtor to take all steps required and/or contemplated to complete the proposed sale;

7.     Granting such other and further relief as the Court deems just and proper.

Dated: November 16, 2022           LESLIE COHEN LAW, PC

By:    */s/ Leslie A. Cohen*

Leslie A. Cohen
Attorneys for Debtor and Debtor
In Possession

MOTION FOR SALE OF PROPERTY

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.  INTRODUCTION

3        Mylife.com, Inc., the Chapter 11 Debtor and Debtor-in-Possession in the above

4  referenced case herein ("**Debtor**"), seeks an order: (1) approving the Letter of Intent

5  ("**LOI**") with Argo Partners II, LLC ("**Argo**" or "**Buyer**"); (2) authorizing the sale, free and

6  clear of liens, of the Estate's interest in all of the rights, interests and proceeds to the

7  Debtor's employee retention tax credits provided under section 2301 of the CARES Act

8  (the "**ERTCs**" or the "**Assets**") to Argo; (3) determining Argo to be a "good faith" purchaser

9  within the meaning of Bankruptcy code Section 363(m); and (4) waiving the 14 day stay

10  under FRBP 6004(h).  The Debtor seeks to sell the Assets for $250,000, to Argo, which is

11  an arms-length buyer. The sale shall be free and clear of all liens and claims, to the extent

12  any exist.

13

## II.  FACTUAL BACKGROUND

14        The Debtor is an information brokerage firm which gathers information through

15  public records and other sources to automatically generate a "MyLife Public Page" for

16  each person. See attached Declaration of Anthony Mazzarella ("**Mazzarella Decl.**").

17        On September 2, 2022 (the "**Petition Date**"), the Debtor filed for Chapter 11

18  bankruptcy protection in the United States Bankruptcy Court for the Central District of

19  California, Los Angeles Division (the "**Bankruptcy Court**"), bearing case number 2:22-bk-

20  14858-ER (the "**Bankruptcy Case**").  Debtor continues to manage its affairs and operate

21  as a debtor-in-possession.  To date, no trustee, examiner or committee has been

22  appointed in this Bankruptcy Case.

23        The Debtor's bankruptcy was precipitated by multiple lawsuits, including a case

24  referred to as he Rancourt Action as well as litigation with the FTC, which required

25  excessive payments to the FTC that were not sustainable.   These and other pre-petition

26  lawsuits have been stayed as to the Debtor pursuant to 11 USC section 362.

27        As indicated on Debtor's Schedule "B," its assets include the Debtor's employee

28  retention tax credits provided under section 2301 of the CARES Act (the "**Assets**") in the

amount of $299,858.83, which it expects to receive sometime in 2023.  See Docket No. 24, p. 25.  Pursuant to this Motion, Debtor is seeking to sell the Assets to Argo for $250,000.

III. **SUMMARY OF PROPOSED SALE AND PROCEDURES**

Pursuant to the LOI attached hereto as ***Exhibit A*** and incorporated herein by reference, the terms of the sale per the LOI are generally as follows:

a.  Argo shall purchase the Assets, consisting of the Debtor's ERTCs due to the Debtor in the amount of $299,858.83;

b.  The Purchase Price for the proposed sale is $250,000.00 (the "**Purchase Price**");

c.  Expenses of each party to be borne by each respective party, except that if the Court requires over-bidding and ARGO is not the ultimate purchaser, then ARGO shall be entitled to a Break Up Fee representing its transaction costs in this matter, to be capped at $10,000.00;

d.  The sale shall be free and clear of all liens and claims to the extent any exist; and

e.  Upon Court approval of these terms, Debtor and the Buyer are to execute any and all documents necessary to effectuate the sale and assignment[1] of Debtor's entire interest in the Assets to the Buyer.

The Debtor respectfully submits that the Assets have already been submitted to a competitive bidding process, and establishing a further bidding procedure is not necessary for the sale of the Assets.  Specifically, the Debtor seeks to sell the Assets to Argo, which is an arms-length purchaser, after negotiations with multiple prospective purchasers/lenders.  Moreover, the Debtor solicited competitive bids from other buyers but received no offers. The Debtor believes that the price, in its business judgment, is fair and reasonable under the circumstances, and in the best interests of the Debtor's estate and creditors, because 1) it will bring much needed cash into the estate and 2) Debtor is

---

[1] Assignment Agreement yet to be drafted per LOI.

1  informed that it can take up to 2 years or more for the IRS to pay the ERTCs.  There are

2  no secured creditors with any interest in the Assets.

3        Further, the sale shall be free and clear of all liens and claims, to the extend any

4  exist.

5        The Mazzarella Declaration also supports that the Debtor did not receive any other

6  offers from other potential buyers, and the Debtor has concluded after a detailed analysis

7  that the current offer is the best possible sale price of Assets, and that the Debtor

8  believes, in its sound business judgment, the sale to be fair and equitable, for the best

9  price and is in the best interests of the estate.  Debtor therefore respectfully submits that

10  the LOI should be approved without a separate and alternative overbid process taking

11  place, and that in light of the terms of sale and the arms-length nature of the proposed

12  Buyer, Debtor respectfully submits that the Court should approve the proposed sale of the

13  Assets.  At the same time, the Debtor is providing notice of the sale to creditors and

14  parties in interest so they can object and offer evidence if they disagree.

15        Additionally, the Debtor is seeking a determination that the ultimate buyer of the

16  Assets is a "good faith purchaser" for the purposes of Section 363(m) of the Bankruptcy

17  Code.  Debtor also requests that the stay provided by Rule 6004(h) of the Federal Rules

18  of Bankruptcy Procedures be waived and no fourteen (14) day stay be in effect after entry

19  of the order granting this Motion.

20                        **IV. <u>DISCUSSION</u>**

21        **a.  <u>The Court Should Authorize The Debtor To Sell The Property Pursuant</u>**

22            **<u>To The Terms Of The Sale</u>**

23        Bankruptcy Code Section 363(b)(1) authorizes the trustee or debtor in possession,

24  after notice and a hearing, to use, sell or lease property of the estate outside the ordinary

25  course of business.  One commentator observes that:

26        [i]n determining whether to approve a proposed sale under section 363,
         courts generally apply standard that represent essentially a business
27        judgment test.  Some courts have described the standard as one of "good
         faith" or of whether the transaction is "fair and equitable."  Others question

28

whether the sale is "in the best interest of the estate." (Citations omitted.)  3
Collier on Bankruptcy Paragraph 363.02[1][f].

While the Debtor believes the sale is not outside the ordinary course of business, it is bringing this Motion out of an abundance of caution and in an effort to make full disclosure.  If the sale were to be considered outside of the ordinary course, the proposed sales pass muster under all of the articulated standards.  The Debtor believes in good faith, as supported by the attached Mazzarella Declaration, that the transaction is more than "fair and equitable" to the creditors of the estate, and thus in the best interest of the estate.  The Mazzarella Declaration also supports that no "over-bidders" have contacted the Debtor, and that the Debtor believes, in its sound business judgment, the sale to be more than fair and equitable, for the best price, and that there are no viable alternative purchasers.  The Debtor believes the sale price reflects market conditions and brings in the most money possible to the estate.  In addition to the fact that this sale will bring much-needed cash into the estate, the Debtor is informed that if it does not sell the Assets, in can take up to 2 years or more for the IRS to pay the ERTC to the Debtor. Moreover, sale of the Assets free and clear is appropriate because the Debtor is not aware of any entity claiming an interest in the ERTC, so there is no interest to dispute, nor any party whose consent is necessary.

In light of the terms of sale and the nature of the proposed purchaser, the Debtor respectfully submits that the Court should approve the proposed sale of the Assets. Additionally, the Debtor requests that the Court approve the sale pursuant to Section 363(b)(1) and 363(f), free and clear of any liens, claims and encumbrances, as contemplated by the LOI, and provide that any and all liens and claims attach to sale proceeds, to the extent any exist.  Debtor requests authority to transfer free and clear title to its buyer and believes that doing so is appropriate under the circumstances.

**c.  <u>The Court Should Find That The Buyers Are A Good Faith
Purchaser Within The Meaning Of 11 U.S.C. § 363(m)</u>**

1    Bankruptcy Code Section 363(m) provides that a purchaser of property of the

2  estate is protected from the effects of a reversal on appeal of the authorization to sell or

3  leas as long as the purchaser acted in good faith and the appellant failed to obtain a stay

4  of sale.  (Citations omitted) 3 Collier on Bankruptcy paragraph 363.11.  The Code does

5  not define "good faith."  Courts have found that a good faith purchase is "one who buys

6  property…for value, without knowledge of adverse claims," and that lack of good faith is

7  typically shown by "fraud, collusion between the purchaser and other bidders or the

8  trustee, or an attempt to take grossly unfair advantage of other bidders." *Id*.

9    As set forth in the Mazzarella Declaration, the Buyer is not an insider of the Debtor,

10  and the offer was negotiated at arms-length and in good faith.  There is no hint of any

11  fraud or collusion or other absence of good faith.  The Debtor has not received any offers

12  that would result in greater value to the estate than the Buyer's LOI, despite its efforts to

13  do so.  In Debtor's sound business judgment, the offer will maximize value to the estate.

14    Additionally, the Debtor is seeking a determination that the ultimate buyer of the

15  Assets is a "good faith purchaser" for the purposes of Section 363(m) of the Bankruptcy

16  Code.  Such a finding is warranted because the Debtor intends to sell the Assets to an

17  independent third party, arms-length buyer at prices that are reasonable and negotiated.

18  As set forth in the Mazzarella Declaration, the Buyer is third-party, arms-length purchaser

19  entitled to the projections of Section 363(b).

20    **d.  <u>The Court Should Waive the 14-day Stay provided by Rule 6004(h)</u>**

21    Debtor also requests that the stay provided by Rule 6004(h) of the Federal Rules of

22  Bankruptcy Procedures be waived and no fourteen (14) day stay be in effect after entry of

23  the order granting this Motion.  Good cause exists for this waiver, as it will allow the sale

24  to bring much needed cash into the estate before the holidays.

25    Accordingly, the Court should find the ultimate Buyer to be a Good Faith Purchaser

26  under Section 363(m).

27  //

28

# V. **CONCLUSION**

As set forth more fully above, and for the reasons herein, the Debtor respectfully request that the Court enter an order (1) granting this Motion, (2) approving the Debtor's proposed LOI with Argo, (3) authorizing the sale, free and clear of liens, of the Estate's interest in the Assets, (4) determining Argo to be a "good faith" purchaser within the meaning of Bankruptcy code Section 363(m), (5) waiving the 14 day stay under FRBP 6004(h), and (6) any other relief the Court shall deem just and proper under the circumstances.

Dated: November 16, 2022                                    LESLIE COHEN LAW, PC

                                                    _____*/s/ Leslie A. Cohen*_____
                                                    Leslie A. Cohen
                                                    Attorneys for Debtor and Debtor in
                                                    Possession

MOTION FOR SALE OF PROPERTY

## DECLARATION OF ANTHONY MAZZARELLA

I, Anthony Mazzarella, hereby declare as follows:

1.    I am over 18 years of age. I am the CFO of Mylife.com, Inc., the Debtor and Debtor-in-Possession ("**Debtor**") in the above-captioned bankruptcy case.  Unless otherwise stated, I have personal knowledge or information of the facts set forth herein and, if called as a witness, could and would testify competently thereto.  Where statements are made upon information and belief, I believe them to be true and correct.

2.    I make this declaration in support of the Debtor's (1) To Approve Letter of Intent, (2) For Authority To Sell Estate's Interest In Employee Retention Tax Credits (3) Determining The Buyer To Be A "Good Faith" Purchaser Within The Meaning Of Bankruptcy Code Section 363(M) ("**Motion**").  Where capitalized terms herein are undefined, they shall have the same meaning as in the Motion.

3.    By the preceding Motion, the Debtor seeks an order: seeks an order: (1) approving the Letter of Intent ("**LOI**") with the Argo Partners II, LLC ("**Argo**" or "**Buyer**"); (2) authorizing the sale, free and clear of liens, of the Estate's interest in all of the rights, interests and proceeds to the Debtor's employee retention tax credits provided under section 2301 of the CARES Act (the "**ERTCs**" or the "**Assets**") to Argo; (3) determining Argo to be a "good faith" purchaser within the meaning of Bankruptcy code Section 363(m); and (4) waiving the 14 day stay under FRBP 6004(h).  The Debtor seeks to sell the Assets for $250,000 to Argo, which is  an arms-length buyer. The sale shall be free and clear of all liens and claims, to the extent any exist.

4.    The Debtor is an information brokerage firm which gathers information through public records and other sources to automatically generate a "MyLife Public Page" for each person.

///

MOTION FOR SALE OF PROPERTY

5.    On September 2, 2022 (the "**Petition Date**"), the Debtor filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "**Bankruptcy Court**"), bearing case number 2:22-bk-14858-ER (the "**Bankruptcy Case**").  Debtor continues to manage its affairs and operate as a debtor-in-possession.  To date, no trustee, examiner or committee has been appointed in this Bankruptcy Case.

6.    The Debtor's bankruptcy was precipitated by multiple lawsuits, including the a case referred to as the Rancourt Action, as well as litigation with the FTC, which required excessive payments to the FTC that were not sustainable.   These and other pre-petition lawsuits have been stayed as to the Debtor pursuant to 11 USC section 362.

7.    Pursuant to the LOI, a true and correct copy of which is attached hereto as ***Exhibit A*** and incorporated herein by reference, the terms of the sale per the LOI are generally as follows:

      a.  Argo shall purchase the Assets, consisting of the Debtor's ERTCs due to the Debtor in the amount of $299,858.83;

      b.  The Purchase Price for the proposed sale is $250,000.00 (the "**Purchase Price**");

      c.  Expenses of each party to be borne by each respective party, except that if the Court requires over-bidding and ARGO is not the ultimate purchaser, then ARGO shall be entitled to a Break Up Fee representing its transaction costs in this matter, to be capped at $10,000.00;

      d.  The sale shall be free and clear of all liens and claims to the extent any exist; and

      e.  Upon Court approval of these terms, Debtor and the Buyer are to execute any and all documents necessary to effectuate the sale and assignment[2] of Debtor's entire interest in the Assets to the Buyer.

---

[2] Assignment Agreement yet to be drafted per LOI.

8.    The Debtor respectfully submits that the Assets have already been submitted to a competitive bidding process, and establishing a further bidding procedure is not necessary for the sale of the Assets.  Specifically, the Debtor seeks to sell the Assets to Argo, which is an arms-length purchaser after negotiations with multiple prospective purchasers/lenders.  Moreover, the Debtor solicited competitive bids from other buyers but received no offers. The Debtor believes that the price, in its business judgment, is fair and reasonable under the circumstances, and in the best interests of the Debtor's estate and creditors because 1) it will bring much needed cash into the estate and 2) Debtor is informed that it can take up to 2 years or more for the IRS to pay the ERTCs.  There are no secured creditors with any interest in the Assets.

9.    While the Debtor believes the sale is not outside the ordinary course of business, it is bringing this Motion out of an abundance of caution and in an effort to make full disclosure.  If the sale were to be considered outside of the ordinary course, the proposed sales pass muster under all of the articulated standards.  The Debtor believes in good faith that the transaction is more than "fair and equitable" to the creditors of the estate, and thus in the best interest of the estate.  No "over-bidders" have contacted the Debtor, and the Debtor believes, in its sound business judgment, the sale to be more than fair and equitable, for the best price, and that there are no viable alternative purchasers. The Debtor believes the sale price reflects market conditions and brings in the most money possible to the estate. In addition to the fact that this sale will bring much-needed cash into the estate, the Debtor is informed that if it does not sell the Assets, in can take up to 2 years or more for the IRS to pay the ERTCs to the Debtor.  Moreover, sale of the Assets free and clear is appropriate because the Debtor is not aware of any entity claiming an interest in the ERTCs, so there is no interest to dispute, nor any party whose consent is necessary.

10.    The Buyer is not an insider of the Debtor, and the offer was negotiated at arms-length and in good faith.  There is no hint of any fraud or collusion or other absence of good faith.  The Debtor has not received any offers that would result in greater value to

1  the estate than the Buyer's LOI, despite its efforts to do so.  In Debtor's sound business

2  judgment, the offer will maximize value to the estate.

3          I declare under penalty of perjury under the laws of the United States that the

4  foregoing is true and correct.

5          Executed on November 16, 2022 at ___Friday Harbor, WA___

6

7                                                                    _____

8                                                    Anthony Mazzarella, CFO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SALE OF PROPERTY

## **EXHIBIT A**

### Argo Partners II, LLC

_**November 11, 2022**_

Mylife.com Inc.
5161 Lankershim Blvd
Ste 250
North Hollywood, CA 91601

Leslie A Cohen
Leslie Cohen Law PC
1615-A Montana Ave
Santa Monica, CA 90403
Email: leslie@lesliecohenlaw.com

**Re**: **Purchase of Employee Retention Tax Credits**

The purpose of this letter of intent ("LOI") is to set forth the basic terms and conditions upon which Argo Partners II, LLC and/or its assigns ("Purchaser"), is willing to purchase from the bankruptcy estate of _Mylife.com, Inc._ ("Debtor," or "Seller"), and Seller is willing to sell to Purchaser, all of the rights, interests and proceeds of the Debtor's employee retention tax credits provided under section 2301 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") as amended, (the "Transaction"). This LOI is not intended to be a binding offer or agreement, but, rather, an expression of the intent of Seller and Purchaser.

We understand that Seller has filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") which case is pending in the United States Bankruptcy Court for the Central District of California, Case No. 22-14858 (the "Bankruptcy Court"), and that the Transaction must be approved by the Bankruptcy Court.

1.  **Assets**. Seller will sell to Purchaser and Purchaser will purchase from Seller, all of the rights, interests and proceeds to the Debtor's employee retention tax credits (listed below) provided under section 2301 of the CARES Act, as amended, for the time periods listed below (collectively, the "Assets" or "ERTCs") free and clear of all liens, claims, interests and encumbrances.

2.  **Back Up Participation and Security Interest**.  To the extent the Asserts are not transferable or assignable as a "true sale", then the Seller shall grant to the Purchaser a 100% participation interest in the Assets as well as a back-up, fully perfected security interest in the Assets.

3.  **Legal Existence**.  The Debtor's estate or its successor shall continue to remain in existence and in compliance with all applicable laws and rules until the proceeds of the ERTCs are received by the Purchaser.   To the

extent that any proceeds of the ERTCs are received by the Seller, Seller shall promptly segregate and turnover such funds to Purchaser.

4.  **Representations and Warranties**.  The Assignment Agreement will contain representations and warranties customary in the secondary claims trading market, including but not limited to, disallowance provisions, clean title without setoff or encumbrances, no bad acts, accuracy of supporting documentation, absence of prior recovery in respect of the ERTCs and no engagement of any tax filer, agent, accountant consultant or other third-party service provider with respect to the ERTCs except as otherwise disclosed therein.  In addition, the Agreement will require Seller to make information and personnel available or seek additional information which may be helpful in the prosecution, defense or settlement of the ERTCs, including any and all information reasonably requested by any governmental taxing authority, us, or our advisors

5.  **ERTC Representations**.  Seller represents to Purchaser that the aggregate amount of the ERTCs are $299,858.53.

6.  **Purchase Price; Payment**.  The purchase price for the Assets (the "Purchase Price") shall be the Purchaser's payment to Seller of $250,000.00 cash which is based on a purchase rate of 83.372649% (the "Purchase Rate").

7.  **Recourse**.  In the event of a disallowance, reduction, subordination or other impairment to the ERTCs for any reason whatsoever including without limitation a breach of any of the terms or conditions of the Assignment Agreement ("Disallowance"), then Seller shall make immediate restitution and repayment of the proportional Purchase Price equal to the product of the amount of the Disallowance and the Purchase Rate *plus* interest, calculated at the rate of nine (9%) percent per annum, from the date of Seller's execution of the Assignment Agreement until the date that such Restitution Payment is received by Purchaser (the "Restitution Payment"). The Restitution Payment shall be (i) granted administrative expense status pursuant to Section 503 of the Bankruptcy Code and (ii) shall be deemed secured by a super priority, perfected security interest in all of the Debtor's assets until the Restitution Payment is received the Purchaser.

8.  **No Assumption of Liabilities**. Purchaser is assuming no obligations or liabilities in respect of Assets, including any obligation which become due and owing to any tax filer or other third-party service provider as a result of this transaction, which obligations and liabilities shall be retained by, and remain the sole responsibility of, Seller. Purchaser is not assuming any liabilities or obligations related to taxes of any kind.

9.    **Access for Inspections, Due Diligence**. Seller will, upon the full execution of this LOI and continuing until the earlier of: (i) the Closing Date, (ii) the termination of this LOI or (iii) ten (10) business days (defined below)(the "Inspection Period"), provide Purchaser with access, during regular business hours and upon prior notice, to all information and documentation in Seller's possession related to the Assets reasonably requested by Purchaser or Purchaser's counsel for inspections and due diligence purposes. Commencing with the execution of this letter, representatives of, and attorneys and auditors for, Purchaser shall conduct a due diligence review of the relevant business activities of Seller, including all financial, accounting and business records, all contracts and to other legal documents (the "Due Diligence Review"). All officers, directors, managers and employees of Seller shall cooperate fully in respect of the Due Diligence Review. Purchaser retains the right to terminate the Transaction at any time during the Inspection Period

10.   **No Material Adverse Change**. Between the date hereof and the Closing Date, there shall be no material adverse change to the value of or the Debtor's rights to the Assets.

11.   **Conditions to Closing.** The Closing of the purchase and sale of the Assets will be subject, among other things, to the following conditions:

    (a)    Seller will, at the Closing, have and convey to Purchaser by bill of sale with special warranty of title, good and marketable title to the Assets, free and clear of all liens, claims, interests and encumbrances, and it can be duly assigned to Purchaser, to Purchaser's sole satisfaction;

    (b)    Seller and Purchaser will have entered into the Assignment Agreement described below on terms and conditions reasonably satisfactory to Seller and Purchaser;

    (c)    The Bankruptcy Court shall have approved the Transaction in accordance with the provisions contained in this LOI and the Assignment Agreement.

    If any of the conditions to the Closing provided for in this paragraph are not satisfied by the Closing Date (hereinafter defined), the Purchaser will have the right and option to terminate the Assignment Agreement by written notice to the Seller if the failure of such condition was not within the control of the party seeking termination.

12.   **Closing.** The closing of the purchase and sale of the Assets (the "Closing"), will take place on a date mutually acceptable to Seller and Purchaser but no later than twenty (20) days after the entry of the Final Order (as herein defined) and the conditions to closing having been satisfied (the "Closing

Date"), at a location mutually acceptable to Seller and Purchaser. The Seller and Purchaser may agree to extend the date for Closing.  At the Closing, the following will occur:

(a)    Seller will convey and deliver to Purchaser good and marketable title to the Assets, free and clear of any liens, claims and encumbrances; and

(b)    Purchaser will deliver to Seller the Purchase Price.

13.    **Purchaser Protection Provisions.** As a condition to Purchaser's participation in the Transaction, Seller shall provide Purchaser, subject to Bankruptcy Court approval, the following Purchaser Protection (collectively, the "Purchaser Protection Provisions"):

(a)    Break-Up Fee.  Seller shall pay Purchaser, if Purchaser is prepared to consummate the Transaction outlined herein, $10,000.00 (the "Break-Up Fee") in cash as compensation for the time and expenses incurred in the event the Assets are sold to any other entity or any plan is confirmed in the Bankruptcy Case (as hereinafter defined) which does not involve Purchaser or does not provide for Purchaser to be the acquiring entity for the Assets or the Seller's business (an "Alternative Disposition").

(b)    Reservation of Equitable Rights and Remedies.  The payment of the Break-Up Fee shall not in any way limit any of Purchaser's equitable rights or remedies against Seller, and Purchaser reserves such rights and the right to pursue its remedies in equity against Seller or any other third party.

(c)    Other Bids.

1.              In the event that Seller shall receive any offer, proposal or inquiry regarding an Alternative Disposition, Seller shall, within one (1) business day, notify Purchaser, in writing, of such proposal or offer, or any inquiry or contact with any person with respect thereto (excluding any informational request), and shall, in any such notice to Purchaser, indicate in reasonable detail the identity of the offeror and the terms and conditions of any proposal.

2.              The Seller shall not support, any transfer of the Assets, so long as Purchaser is prepared to consummate the Transaction, unless such other transaction (i) provides an aggregate present value of at least $15,000.00 higher than the

present value of the Transaction to Seller' estate, and (ii) provides for payment to Purchaser of the Break-Up Fee. For purposes hereof, the aggregate present value of the Transaction shall be deemed to be <u>$260,000.00</u>. Such payment describe in (ii) above shall be granted administrative expense priority in Seller's estate and shall besecured by a first priority lien on the Assets.

(d)    <u>Administrative Expense Status</u>. The Break-Up Fee (as applicable) shall constitute first priority administrative expenses of Seller pursuant to § 503 of the Bankruptcy Code, shall be secured by a valid and enforceable senior lien onall of Seller' assets, and shall be paid by Seller upon demand from Purchaser. From and after such demand, until payment in full of the Break-Up Fee, as applicable, interest shall accrue on any unpaid portion at a rate per annum equal to 9% per annum. Notwithstanding anything contained herein tothe contrary, the Break Up Fee shall only be due and payable from the proceeds from another sale transaction related to some or all of the Assets.

14.    **Bankruptcy Court Approval**. Purchaser and Seller hereby acknowledge that Seller is currently a debtor in a case under the Bankruptcy Code. Seller shall, within five (5) days, file a motion with the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9013 and Sections 363 and 365 of the Bankruptcy Code (the "<u>Sale Motion</u>") seeking (i) approval of this LOI and approval of the Assignment Agreement and entry of an Order approving the sale of the Assets to Purchaser, free and clear of all liens, claims, security interests, interests, and encumbrances pursuant to Section 363 of the Bankruptcy Court. Seller shall use its best efforts to obtain Bankruptcy Court approval of the Sale Motion as soon as practicable; <u>provided</u>, <u>however</u>, if a Final Order (as hereinafter defined) of the Bankruptcy Court is not obtained on or before <u>December 15, 2022</u>, Purchaser may terminate the Transaction. The Assignment Agreement shall be subject to entry of a Final Order of the Bankruptcy Court ("<u>Final Order</u>") approving the (i) Sale Motion, (ii) the Assignment Agreement, and (iii) the sale of the Assets to Purchaser free and clear of all liens, claims, interests, and encumbrances, in the form and substance approved by Purchaser. As a condition to Purchaser's obligations hereunder, the Bankruptcy Court shall have entered a Final Order approving the sale in a form and substance acceptable to Purchaser, as to which no appeals or motions for rehearingare pending and as to which no stay is issued and the time for filing same has expired; <u>provided,</u> <u>however</u>, if an appeal or motion for rehearing is pending, Purchaser may waive the requirement for a Final Order and close the Transaction provided there is no stay of the effects of such Final Order.

15. **Confidentiality.** All information furnished to Purchaser in connection with the Due Diligence Review that is identified in writing by Seller as being confidential shall be held by Purchaser as proprietary information of Seller (the "Proprietary Information"). The Proprietary Information shall not include, however, information that has been disclosed to the public by Seller or that is currently known to Purchaser. Any Proprietary Information that is subsequently disclosed to the public by Seller shall lose its character as proprietary information at the time of disclosure. Purchaser and Seller shall, and shall cause each of their respective directors, officers, partners, employees, representatives and agents, to hold in strictest confidence and not use in any manner whatsoever, other than as contemplated by this LOI, (a) any confidential information of the other party, including any trade secrets or other information not generally available to the public, and (b) the terms and provisions of this LOI to any third parties, except to the Bankruptcy Court and creditors in the Bankruptcy Case, and their professionals and advisors.

16. **Professional Fees.** Except as provided in paragraph 13 hereof, each of Seller and Purchaser will pay for the costs of their own professional advisors, including attorneys, accountants, and financial advisors associated with this Transaction.

17. **Assignability.** This LOI shall not be assignable by either Seller or Purchaser, except with the prior written consent of the other party; provided, however, Purchaser may assign its rights to an affiliate or any entity owned in whole or in part by Purchaser and/or its affiliates. Any permitted assignment shall not release the assigning party of any of its obligations under this LOI.

18. **Formal Assignment Agreement.** Seller and Purchaser will enter into a formal Assignment Agreement incorporating the terms and conditions contained in this LOI. The formal Assignment Agreement will contain such additional terms and conditions, including without limitation, representations, warranties, covenants, indemnifications, conditions to closing and other provisions consistent with the terms of this LOI as are typically included in an asset purchase agreement for a transaction of the type, size and nature described in this LOI. Seller and Purchaser agree to negotiate in good faith to complete the Assignment Agreement on or before ten (10) days after the expiration of the Inspection Period. Unless waived by the Purchaser, if the Assignment Agreement has not been executed by ten (10) days after the Inspection Period stated herein and filed with the Bankruptcy Court, the understandings set forth in this LOI shall expire and the parties shall have no further obligations to each other.

Neither Seller nor Purchaser shall be obligated to proceed with the Transaction contemplated by this LOI until the definitive Assignment Agreement has been fully

executed and delivered.

The agreements contained herein supercede all prior agreements relating to the subject matter hereof.  The parties to this LOI agree that this letter agreement may be executed in multiple originals, each of which will be considered an original for all purposes.  The parties to this LOI further agree that facsimile or copies of signature sent by electronic mail may be considered an original for all purposes, including, but not limited to, execution of this LOI and enforcement of this LOI.

If the foregoing terms and conditions are acceptable to you as the basis upon which Purchaser will purchase and Seller will sell the Assets, please so indicate by signing a copy of this LOI in the space provided for your signature, and returning a fully executed copy to the undersigned. Upon receipt of a fully executed copy of this LOI, we will instruct our counsel to proceed with the preparation of the initial draft of the Assignment Agreement.

This letter will expire and become invalid unless executed by Seller prior to 4:30 p.m., New York time on November 12, 2022.

We look forward to hearing from you and working toward a successful conclusion of this Transaction.

Sincerely yours,

Matthew Binstock, Senior Vice-President
Argo Partners II, LLC

**ACCEPTED AND AGREED** to
this  16th  day of November, 2022:

By: _____

Name:  Anthony Mazzarella

Title:  CFO

NYACTIVE-22161060.1

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1615-A Montana Avenue, Santa Monica, CA 90403

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION BY DEBTOR IN POSSESSION (1) TO APPROVE LETTER OF INTENT, (2) FOR AUTHORITY TO SELL ESTATE'S INTEREST IN EMPLOYEE RETENTION TAX CREDITS (3) DETERMINING THE BUYER TO BE A "GOOD FAITH" PURCHASER WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 363(M); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF ANTHONY MAZZARELLA** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____11/16/22_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

      Shraddha Bharatia    notices@becket-lee.com
      Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
      Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;jessica@lesliecohenlaw.com
      Leah Victoria Lerman    leah.v.lerman@usdoj.gov
      United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
      Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____11/16/22____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _11/16/22_ | _Jessica Spagnoli_ | _/s/ Jessica Spagnoli_ |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**

Hon. Ernest M. Robles
US Bankruptcy Court
255 E. Temple Street
Suite 1560
Los Angeles, CA, 90012

Mylife.com Inc.
1100 Glendon Ave.
17th Floor
Los Angeles, CA, 90024

United States Trustee
915 Wilshire Blvd, Suite 1850
Los Angeles, CA, 90017

Argo Partners II, LLC
c/o Gregory Plotko
Crowell & Moring LLP
590 Madison Ave, 20th Floor
New York, NY 10022

### **Secured**

Bank Of The West
475 Sansome St. Floor 19
San Francisco, CA, 94111

De Lage Landen Financial
Services, Inc.
P.O. Box 41602
Philadelphia, PA, 19101-1602

Dell Financial Services LLC
Payment Processing Center
P.O. Box 5292
Carol Stream, IL, 60197-5292

EMC Corporation
176 South St.
Hopkinton, MA, 01748

### **20 Largest Unsecured**

USDOJ
Consumer Protection Branch
Attn: Zachary A. Dietert
450 5th Street, N.W.
Ste. 6400-South
Washington, DC, 20530

DLA Piper LLP
P.O. Box 75190
Baltimore, MD, 21275

Epstein Becker & Green, P.C.
875 Third Avenue
New York, NY, 10022

Lexis Nexis
28330 Network Place
Chicago, IL, 60673-1283

Google Inc.
P.O. Box 883654
Los Angeles, CA, 90088-3654

Mayer Brown LLP
2027 Collection Center Dr
Chicago, IL, 60693-0020

Zaius, Inc.
205 Portland Street 6th Floor
Boston, MA, 2114

DE Park Avenue 1100, LLC
10866 Wilshire Blvd. Suite 270
Los Angeles, CA, 90024

Morrison & Foerster LLP
P. O. Box 742335
Los Angeles, CA, 90074-2335

Validity Inc.
DEPT CH 17384
Palatine, IL, 60055-7384

TransUnion Risk and Alternative
Solutions, Inc.
P. O. Box 209047
Dallas, TX, 75320-9047

Protiviti Inc
12269 Collections Center Drive
Chicago, IL, 60693

Ethoca Limited
100 Sheppard Avenue East, Suite 6
Toronto, Canada
ON M2N 6N5

Maribel Deyerler
121 West Hillgrove Ave, Unit 45
La Grange, IL, 60525

Monika Cichowlas
8545 N Capital of Texas Hwy, Apt 2
Austin, TX, 78759

John Bonell
1107 W. Pendleton Place
Mt. Prospect, IL, 60056

Accertify, Inc.
25895 Network Place
Chicago, IL, 60673-1258

Nixon Peabody LLP
Attn: Felicia McClendon
One California Plaza
300 South Grand Ave. Ste. 4100
Los Angeles, CA, 90071

InboxAlly Inc.
1178 Broadway, 3rd floor #1166
New York, NY, 10001

Mississippi Tornado Alley LLC
1915 21st Street
Sacramento, CA, 95811