

**FILED & ENTERED**

**SEP 14 2023**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:   MyLife.com Inc., <br>               Debtor. | Case No.: 2:22-bk-14858-ER <br> Chapter:  11 <br><br> **MEMORANDUM OF DECISION DENYING DEBTOR'S MOTION FOR ISSUANCE OF A § 105 INJUNCTION AS TO NON-DEBTOR JEFFREY TINSLEY** <br><br> **[RELATES TO DOC. NO. 209]** <br><br> Date:      August 23, 2023 <br> Time:     10:00 a.m. <br> Location: Courtroom 1568 <br>               Roybal Federal Building <br>               255 East Temple Street <br>               Los Angeles, CA 90012 |

At the above-captioned date and time, the Court conducted a hearing on the *Motion for Order Extending the Automatic Stay to Non-Debtor Defendant* [Bankr. Doc. No. 209] (the "Motion") filed by MyLife.com Inc. (the "Debtor").[1] For the reasons set forth below, the Motion is **DENIED**.

---

[1] The Court considered the following pleadings in adjudicating this matter:
  1) Notice of Motion and Motion for Order Extending the Automatic Stay to Non-Debtor Defendant [Bankr. Doc. No. 209] (the "Motion");
  2) The United States of America's Objection to the Debtor's Motion for an Order Extending the Automatic Stay to Non-Debtor Defendant [Bankr. Doc. No. 221] (the "Opposition");
  3) Reply in Support of Motion for Order Extending the Automatic Stay to Non-Debtor Defendant [Bankr. Doc. No. 226] (the "Reply");
  4) Notice of Administrative Priority Claim [Bankr. Doc. No. 207]; and
  5) The United States of America's Objection to Notice of Administrative Priority Claim [Bankr. Doc. No. 222].

## I. Facts and Summary of Pleadings

On September 2, 2022 (the "Petition Date"), MyLife.com Inc. (the "Debtor") filed a voluntary Chapter 11 petition. Jeffrey Tinsley ("Tinsley") is the Debtor's CEO and Chairman and holds a 56.2% interest in the Debtor. Amended Statement of Financial Affairs [Doc. No. 36] at ¶ 28. The Debtor operates a website that allows subscribers to run background checks on individuals.

On November 30, 2022, upon the motion of the Debtor, the Court issued a § 105 injunction barring the continued prosecution as to Tinsley of an action pending before the United States District Court for the Northern District of Florida (the "Florida District Court"). Bankr. Doc. Nos. 48–49. The Court found that issuance of the injunction was appropriate so that Tinsley could focus his attention upon the Debtor's reorganization, rather than the litigation in Florida:

> Absent issuance of a § 105 injunction, Tinsley would be required to spend significant time attending depositions and pretrial hearings and responding to discovery in the arbitration of the Rancourt Action. As the Debtor's Chairman and CEO, it is critical that Tinsley not be distracted from focusing upon the Debtor's reorganization, particularly at this early stage of the case. Where nonbankruptcy litigation prevents a debtor's key personnel from focusing exclusively upon the reorganization, the continuance of such litigation may pose irreparable harm to the debtor. *See, e.g., In re Philadelphia Newspapers, LLC,* 407 B.R. 606, 617 (E.D. Pa. 2009) (finding that a "danger of imminent, irreparable harm to the estate or the Debtors' ability to reorganize" would exist unless nonbankruptcy litigation against the debtors' key personnel was stayed). Here, the Court finds that if the arbitration of the Rancourt Action is not stayed, the demands upon Tinsley's time will prevent him from sufficiently focusing upon the reorganization, resulting in irreparable harm to the Debtor.

Memorandum of Decision Granting Debtor's Motion to Stay Litigation as to Non-Debtor Defendant Jeffrey Tinsley [Bankr. Doc. No. 48] at p. 4.

On July 27, 2020 (prior to the Petition Date), the United States of America (the "US") filed a complaint against the Debtor and Tinsley in the United States District Court for the Central District of California (the "District Court Complaint"), seeking relief for (1) deceptive business practices in violation of § 5(a) of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 45(a), (2) violation of the Telemarketing Sales Rule (the "TSR"), 16 C.F.R. § 310.3(a)(1)–(2), and (3) violation of the Restore Online Shoppers Confidence Act ("ROSCA"), 15 U.S.C. § 8403 (collectively, the "Consumer Protection Statutes"). *See* Case No. 2:20-cv-6692-JFW (the "District Court Action").

On December 15, 2021, the District Court approved a *Stipulated Order for Permanent Injunction and Equitable Monetary Relief* (the "Stipulated Judgment") entered into between the US, on the one hand, and Tinsley and the Debtor, on the other hand. Among other things, the Stipulated Judgment (1) enters a judgment of $5 million against Tinsley and in favor of the US (the "Tinsley Debt"), (2) establishes a schedule for payment of the Tinsley Debt, and (3) grants the US a security interest in Tinsley's principal residence to secure repayment of the Tinsley Debt. In the Stipulated Judgment, Tinsley did not admit or deny any of the allegations of the District Court Complaint, except as specifically stated in his answer to the District Court Complaint. Stipulated Judgment, "Findings," ¶ 3.

Tinsley asserts an administrative expense claim against the estate in the amount of no less than $1,175,000 [Bankr. Doc. No. 207] (the "Tinsley Administrative Claim"). The Tinsley Administrative Claim is based upon an indemnification agreement between Tinsley and the Debtor (the "Indemnification Agreement"). Tinsley's position is that the Indemnification Agreement requires the Debtor to reimburse him for any payments made to satisfy the Tinsley Debt. Tinsley states that he has paid $1,175,000 toward the Tinsley Debt subsequent to the Petition Date, and contends that these payments are allowable as an administrative expense claim.

The US objects to the allowability of the Tinsley Administrative Claim, on the ground that the Indemnification Agreement was executed prior to the Petition Date, making any indebtedness arising thereunder a general unsecured claim, rather than an administrative claim. Tinsley has not sought a hearing date on the allowability of the Tinsley Administrative Claim.

**Summary of Papers Filed in Connection with the Motion**

The Debtor moves for issuance of a § 105 injunction as to Tinsley to prevent the US from seeking to collect the Tinsley Debt. According to the Debtor, in the absence of an injunction, its ability to reorganize will be impaired because any amounts collected from Tinsley will increase the amount of the Tinsley Administrative Claim. The Debtor also asserts that continued collection of the Tinsley Debt will divert Tinsley's attention and focus from the Debtor's reorganization.

In opposition to the Motion, the US disputes the allowability of the Tinsley Administrative Claim. The US argues that any claim arising from the Indemnification Agreement is allowable only as a general unsecured claim because the agreement was executed prior to the Petition Date, and that even if this obstacle could be overcome, Tinsley would still not be entitled to an administrative claim because he has failed to demonstrate that the Indemnification Agreement provided any benefit to the estate.

In reply to the opposition filed by the US, the Debtor contends that even if Tinsley does not hold an administrative claim, a § 105 injunction is nonetheless necessary because "with each payment that Tinsley makes under the Stipulated Judgment, the Debtor's obligation to Tinsley grows," such that the payments "direct affect[] the estate." Reply [Bankr. Doc. No. 228] at p. 3.

## II. Findings of Fact and Conclusions of Law

"Section 105(a) gives the bankruptcy courts the power to stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but 'threaten the integrity of a bankrupt's estate.'" *Indivos Corp. v. Excel Innovations, Inc., Ned Hoffman (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1095 (9th Cir. 2007). The standard governing issuance of a preliminary injunction also applies to issuance of a § 105 injunction, except that in lieu of showing a likelihood of success on the merits, the debtor "must show a reasonable likelihood of a successful reorganization." *Id.* A § 105 injunction should "not be granted lightly," *id.*, and the time in which such an injunction remains in effect may not extend beyond the confirmation of a Chapter 11 plan, *id.*[2] **[Note 1]**

---

[2] Unpublished cases issued within the Ninth Circuit have held that the automatic stay may be extended to actions against a non-debtor where "unusual circumstances" cause the interests of the debtor and the non-debtor defendant to be inextricably interwoven. *See, e.g.*, *Zurich Am. Ins. Co. v. Trans Cal Assocs.*, No. 2:10-cv-01957-WBS, 2011 WL 6329959, at *2 (E.D. Cal. Dec. 16, 2011); *PNC Bank, Nat'l Ass'n v. Smith*, No. 2:10-cv-1916-JAM-EFB PS, 2014 U.S. Dist. LEXIS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). Even subsequent to *Winters*, a preliminary injunction may issue "where the likelihood of success is such that 'serious questions going to the merits [are] raised and the balance of hardships tips sharply in [plaintiff's] favor,'" *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011), provided that the plaintiff "also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest," *id.* at 1135.

For the reasons set forth below, the Court finds that the Debtor has failed to demonstrate that it is entitled to the issuance of a § 105 injunction in favor of Tinsley with respect to efforts by the US to collect the Tinsley Debt.

### *A. Likelihood of a Successful Reorganization*

Significant questions remain as to the Debtor's ability to successfully reorganize. The Debtor owes more than $25 million to the US under the Stipulated Judgment (the "US Debt"). The US has filed a complaint seeking a determination that the US Debt is non-dischargeable pursuant to §§ 1141(d)(6)(A) and 523(a)(2)(A). On July 31, 2023, the Court entered a Memorandum of Decision granting in part and denying in part the US' motion for summary judgment [Adv. Doc. No. 65] (the "Memorandum"). In the Memorandum, the Court found that decisions made by the District Court precluded the Debtor from contesting (1) that it had knowingly made false representations, (2) that creditors relied upon the false representations, and (3) that creditors sustained damages as a result of the false representations. Memorandum at pp. 6–10. The Court found that the only issue that remained for trial was whether the Debtor intended to deceive those consumers to whom it made false representations. *Id.* at pp. 11–12.

A determination that the US Debt is non-dischargeable would make it exceptionally difficult, if not impossible, for the Debtor to successfully reorganize. The Court has found that the US has established four of the five elements necessary to obtain a finding of non-dischargeability. Of course, it cannot be predicted whether the US will be able to establish the final element—intent to deceive—at trial. However, the possibility that the US Debt will be determined to be non-dischargeable is significant enough that the Court *cannot* find that the Debtor has carried its burden of showing that a successful reorganization is likely.

In addition, the Stipulated Judgment has imposed significant constraints upon the Debtor's business operations, resulting in a diminution of its cash flow. The Monthly Operating Report for the reporting period ending on July 31, 2023 [Bankr. Doc. No. 229] shows that since the Petition Date, the Debtor has generated a cumulative loss of ($17,506). Nor do the Debtor's operating results show any signs of improving—for example, for the month of July 2023, the Debtor earned a profit of only $3,282. The Debtor's poor operating results cast additional doubt upon its ability to successfully reorganize.

---

46163, at *1-2 (E.D. Cal. Mar. 31, 2014). However, as explained in *Excel Innovations*, reliance upon the "unusual circumstances" doctrine as an independent basis for issuance of § 105 injunction is error, "because the 'unusual circumstances' doctrine does not negate the traditional preliminary injunction standard." *Excel Innovations*, 502 F.3d at 1096. Therefore, in determining whether issuance of a § 105 injunction is appropriate, the Court applies the preliminary injunction standard, not the "unusual circumstances" doctrine.

*B. Likelihood of Irreparable Harm Absent Issuance of an Injunction*

When it issued the prior § 105 injunction staying prosecution of the Rancourt Action as to Tinsley, the Court found that absent the issuance of an injunction, the Debtor would be irreparably harmed because "Tinsley would be required to spend significant time attending depositions and pretrial hearings and responding to discovery in the arbitration of the Rancourt Action." Memorandum of Decision Granting Debtor's Motion to Stay Litigation as to Non-Debtor Defendant Jeffrey Tinsley [Bankr. Doc. No. 48] at p. 4. The Debtor has failed to demonstrate that comparable burdens upon Tinsley's time and focus would be imposed if the Court declines to enjoin the collection of the US Debt. Collection of the US Debt would certainly impose some demands upon Tinsley's time and attention, but such demands are comparatively inconsequential relative to the burdens of actively defending against significant litigation pending across the country. The most significant burden Tinsley would likely face in connection with collection efforts is the possibility that the US might attempt to enforce its security interest against Tinsley's personal residence. While this would be unpleasant for Tinsley, it would not irreparably harm the Debtor.

The Debtor contends that that its obligations to Tinsley under the Indemnification Agreement will increase in the absence of a § 105 injunction, and argues that these increased obligations constitute irreparable harm. The Court does not agree that irreparable harm to the Debtor is likely as a result of whatever obligations the Debtor may or may not have to Tinsley under the Indemnification Agreement. It is important to emphasize that the Court makes no findings as to whether the Indemnification Agreement entitles Tinsley to an administrative claim, a general unsecured claim, or no claim at all, as these issues are not properly before the Court. Instead, the lens through which the Court views issues pertaining to the Indemnification Agreement is whether the Debtor has shown that irreparable harm is likely from any obligations that may (or may not) arise thereunder.

Viewing the Indemnification Agreement through this lens, the Court finds that the Debtor has failed to demonstrate irreparable harm, because whatever obligations the Debtor may (or may not) have to Tinsley under that agreement would most likely be relegated to the status of a general unsecured claim. Section 503(b) provides for the allowance of administrative expenses, including "the actual, necessary costs and expenses of preserving the estate." "Administrative status is allowed when a claim (1) is incurred postpetition, (2) directly and substantially benefits the estate, and (3) is an actual and necessary expense." *Gull Indus., Inc. v. Mitchell (In re Hanna)*, 168 B.R. 386, 388 (B.A.P. 9th Cir. 1994). "The burden of proving an administrative expense claim is on the claimant," and administrative claims are "construed narrowly" in order "to keep administrative costs to the estate at a minimum." *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995). A claimant "must prove by a preponderance of the evidence entitlement to the administrative expense." *Hanna*, 168 B.R. at 388.

The Indemnification Agreement was executed *prior* to the Petition Date. The Debtor's liability thereunder most likely arose prior to the Petition Date because at the time the agreement was executed, the amount of the Tinsley Debt and the repayment schedule for that debt was known. "[A] claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Picerne Construction Corp. v. Castellino Villas, A.K.F. LLC (In re Castellino Villas, A. K. F. LLC)*, 836 F.3d 1028, 1034 (9th Cir. 2016). Because the Debtor's liability to Tinsley under the Indemnification Agreement, if any, most likely arose prior to the Petition Date, such liability

most likely constitutes a general unsecured claim. If that is the case, the Debtor's obligations under the Indemnification Agreement were fixed as of the Petition Date, and will not be altered based upon whether the Court issues a § 105 injunction. For these reasons, the Debtor has failed to show that it will be irreparably harmed if the Court declines to issue the requested injunction.

*C. Balance of the Equities and the Public Interest*

The equities weigh and the public interest weigh against issuance of a § 105 injunction. Tinsley owes substantial sums to the US under the Stipulated Judgment which remain unpaid. Tinsley himself has not sought bankruptcy protection. Given that the Debtor has not made a showing of irreparable harm or demonstrated a likelihood of successful reorganization, there is no reason why Tinsley should benefit from a stay on the enforcement of the monetary provisions of the Stipulated Judgment.

## III. Conclusion

Based upon the foregoing, the Motion is **DENIED**. The Court will prepare and enter an order denying the Motion.

###

Date: September 14, 2023

Ernest M. Robles
United States Bankruptcy Judge